UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────

WILLIAM WASHINGTON,

                     Petitioner,

          - against -

THOMAS POOLE, SUPERINTENDENT, FIVE
POINTS CORRECTIONAL FACILITY,

                     Respondent.
────────────────────────────────────

06 Civ. 2415 (JGK)

OPINION AND ORDER

JOHN G. KOELTL, District Judge:

     The petitioner William Washington seeks a writ of habeas
corpus pursuant to 28 U.S.C. § 2254 to set aside his conviction
and sentence in the New York State Supreme Court, New York
County, for grand larceny in the fourth degree, a violation of
N.Y. Penal Law § 155.30(5), for taking a person's wallet.  The
petitioner was sentenced pursuant to New York's persistent felony
offender statute, N.Y. Penal Law § 70.10, to an indeterminate
prison term of twenty years to life, but the term was reduced by
the Appellate Division to fifteen years to life.  The petitioner
is currently serving his term of imprisonment at the Five Points
Correctional Facility in Romulus, New York.

     The petitioner raises two arguments:  (i) that he was
deprived of his Sixth Amendment right to counsel because the
trial court prohibited defense counsel from arguing in summation
that the People's evidence supported the defense theory that the
petitioner found the wallet he was charged with stealing, and

1

(ii) that his sentence under the persistent felony offender statute was unconstitutional in light of Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), and its progeny.

Because the petitioner's sentence violated his constitutional right to a jury trial, the petition is **granted**.


**I.**

**A.**

The evidence at trial showed that the petitioner took a wallet from the pocket of William Carelis, a seventy year old man, at the Port Authority Bus Terminal in Manhattan on April 16, 2002.

Abdoulaye Sakho, an employee of a bus company at the terminal, testified for the People at trial. (See Petr.'s App. ("PA") 32-33.) Sakho was getting coffee when he noticed Carelis walking down the stairs to the lower level and the petitioner walking behind him. (PA 36-38.) Sakho saw the petitioner bump into Carelis causing him to stumble down the flight of stairs. (PA 39-41.) The petitioner approached Carelis and asked whether he was "okay." (PA 40-41, 63.) Sakho testified that as the petitioner helped Carelis up he reached into Carelis's right pocket and removed his wallet, and the petitioner snatched it away when Carelis resisted. (PA 41-42, 64-66.) Carelis called for help, and Sakho pursued the petitioner as he ran away,

following him up an escalator.  (PA 42, 67-70.)  At the top of the escalator, Sakho grabbed the petitioner, and the petitioner threw the wallet from the top of the escalator toward Carelis. (PA 42, 43-44, 46, 55-56, 68-71.)  Sakho held the petitioner while the Port Authority Police were contacted and until the police arrived.  (PA 45.)

Carelis also testified for the People.  Carelis's account differed from Sakho's in that Carelis recalled feeling someone "brush against" the left pocket of his pants as he was walking. (PA 9, 16-18, 28-29.)  Carelis discovered that his wallet, which contained $90, was missing, and he noticed the petitioner in the vicinity.  (PA 5-7, 10, 17-19, 22, 27.)  Carelis said to the petitioner, "stop . . . you have my wallet," but the petitioner kept walking.  (PA 10-11.)  Carelis followed the petitioner down the stairs, but stumbled, and he yelled, "Hey, stop that guy, he's got my wallet."  (PA 8-9, 11-12, 19-21, 25.)  Carelis's account of the petitioner's apprehension by Sakho largely mirrors Sakho's testimony summarized above.  (See PA 11-13, 22-28.) Carelis testified that when the petitioner tossed his wallet to Carelis he told Carelis that he "found" the wallet.  (PA 13, 24.)

The petitioner presented no witnesses at trial.  During summation, defense counsel argued that the People had failed to prove that the petitioner had used physical force to steal Carelis's wallet, emphasizing that Sakho and Carelis's testimony

conflicted on this point.  (PA 73-77.)  Defense counsel claimed

that according to Carelis's own testimony, there was "no way" the

wallet could have been positioned so that the petitioner could

take it because Carelis's left pocket was buttoned and covered by

a sweater.  (PA 78.)  When defense counsel said, "Is it possible

that his wallet fell out of his pocket and [the petitioner]

picked it up?" the prosecutor objected, and the court instructed

defense counsel that he could not ask the jury to speculate on

that subject because there was no evidence that the wallet fell

out of Carelis's pocket.  (PA 78-79.)  Later in the summation,

defense counsel asked without objection whether it was

"reasonable to believe that [the petitioner] returned the wallet

and he did so because he found it" and stated that the alleged

victim provided facts demonstrating that "there could be an

innocent explanation for why [the petitioner] had the wallet."

(PA 81.)

After an adjournment until the next day, the defense counsel

raised again with the Court the subject of the prior objection

that was sustained.  (See PA 91-92.)  The defense counsel claimed

that he should have been allowed to argue the possibility that

Carelis had dropped the wallet.  (PA 91.)  The court responded

that in sustaining the prosecutor's objection, the court had

instructed the jurors that only their recollection of the

evidence would control and that they could not speculate on

4

things not in evidence, and it refused a request for more time to sum up.  (PA 92.)

On October 31, 2002, the jury convicted the petitioner of grand larceny in the fourth degree in violation of N.Y. Penal Law § 155.30(5), but it acquitted him of a charge of robbery in the third degree.  Grand larceny in the fourth degree is a non-violent, class "E" felony which, because of the defendant's undisputed status as a second felony offender, would result in an indeterminate sentence with a maximum range of two to four years imprisonment without the application of the persistent felony offender statute.  See N.Y. Penal Law § 70.06.

The prosecution moved to enhance the sentence pursuant to the persistent felony offender statute, N.Y. Penal Law § 70.10. That statute defines a "persistent felony offender" as "a person, other than a persistent violent felony offender as defined in section 70.08, who stands convicted of a felony after having previously been convicted of two or more felonies."  Id. § 70.10(1).  The statute also provides that when a defendant has been found to be a persistent felony offender, and when the court "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest," the court may impose an enhanced sentence of imprisonment defined as the

sentence that a defendant who committed an "A-I" felony would receive under the relevant sentencing statute.  See id. § 70.10(2).  The term of imprisonment for an A-I felony is an indeterminate sentence with a minimum of fifteen to twenty-five years and a maximum of life imprisonment.  N.Y. Penal Law § 70.00.  The associated criminal procedure law, N.Y. Crim. Proc. Law § 400.20, specifies procedures the court must follow to impose a persistent felony offender sentence, including the necessity of a hearing and the burden of and standard of proof imposed upon the prosecutor.

On December 17, 2002, the court ordered a hearing to determine whether the enhancement should apply.  See N.Y. Crim. Proc. Law § 400.20(3)-(4).  The petitioner submitted a memorandum in advance of the hearing arguing that the persistent felony offender provisions violated the Sixth and Fourteenth Amendments under Apprendi and Ring v. Arizona, 536 U.S. 584 (2002).  At a hearing on January 23, 2003, the petitioner admitted two of his prior felony convictions, rendering him a persistent felony offender as defined by N.Y. Penal Law § 70.10(1)(a).

When the court sentenced the defendant on January 30, 2003, the court found that the petitioner qualified as a persistent felony offender, reviewed his criminal history, and concluded that his history and character and the nature and circumstances of his criminal conduct warranted extended incarceration and

lifetime supervision.   The court explained that it relied on the extensive number of his prior convictions, the fact that he repeated the same sorts of theft crimes at the same location, and the court's conclusion that he was beyond rehabilitation and would continue to steal "as long as he is physically able."   (See PA 154-161.)   Specifically, the court stated:

> The [petitioner] has twelve theft related misdemeanor convictions in New York City alone . . . .   He also has three theft related felony convictions between 1990 and 1999 in New York City, not including this one. . . . Before he came to New York City, he was arrested fifty-seven times, as I said earlier, in various states for just about every crime imaginable . . . .   After he is released from committing one crime he seems to go right back and commit another crime and is brought back to jail.   On his New York record alone, not even considering anything he did before he came to this city, he should receive a lifetime supervision sentence.   In my judgment he is far beyond any rehabilitation and as long as he is physically able to steal, he will.   This is someone who is not going to stop committing crimes.

(PA 161.)   The court sentenced the petitioner, who was 58 years old, to an indeterminate term of twenty years to life imprisonment.

**B.**

On appeal to the Appellate Division, First Department, the petitioner argued (i) that the trial court improperly prohibited defense counsel from arguing in summation that the petitioner had merely found the wallet, not taken it from Carelis, (ii) that his

7

sentence was unconstitutional because it was enhanced beyond the prescribed statutory range based on factual findings by the court that were not submitted to the jury or found beyond a reasonable doubt, and (iii) that his sentence was excessive.  On August 4, 2005, the Appellate Division affirmed the conviction but modified the sentence to fifteen years to life in the interest of justice. See People v. Washington, 799 N.Y.S.2d 217, 217 (App. Div. 2005). The Appellate Division agreed with the trial court that it was speculative to argue that the wallet fell out of the victim's pocket, and that the defense had been able to make essentially the same argument in any event, so there was no denial of the right to counsel.  Id.  The Appellate Division cited the New York Court of Appeals decision in People v. Rivera, 833 N.E.2d 194 (N.Y. 2005), and its earlier decision in People v. Rosen, 752 N.E.2d 844 (N.Y. 2001), in finding that the persistent felony offender sentencing procedure was not unconstitutional. Washington, 799 N.Y.S.2d at 218.

The petitioner sought leave to appeal to the New York Court of Appeals, arguing both that the restriction on defense summation denied his Sixth Amendment right to counsel and that his sentence was unconstitutional.  The Court of Appeals denied leave on September 12, 2005.  People v. Washington, 837 N.E.2d 747 (N.Y. 2005) (table).  The petitioner sought a writ of certiorari from the United States Supreme Court only on the

Apprendi sentencing question, but the Court denied certiorari on January 9, 2006.  Washington v. New York, 126 S. Ct. 1047 (2006) (table).

This petition was filed on March 29, 2006.  The Court held oral argument on the petition on May 8, 2007 and took the matter under advisement at that time.

## II.

In this petition, the petitioner argues (i) that the trial court improperly limited defense counsel's summation, denying the petitioner his Sixth Amendment right to the assistance of counsel, and (ii) that his sentence as a persistent felony offender was unconstitutional under the Apprendi line of cases.

It is apparent that the petitioner has exhausted these two claims because he pursued both claims all the way to the New York Court of Appeals citing the relevant constitutional amendments and the leading Supreme Court cases on the issues at hand.  He also timely filed his petition because it came within one year of the conclusion of certiorari proceedings in the United States Supreme Court.  See Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001).

Because a state court previously adjudicated the petitioner's claims on the merits, this Court evaluates the petitioner's claims using the deferential standard of review

established by the Antiterrorism and Effective Death Penalty Act
of 1996 ("AEDPA") and set forth in 28 U.S.C. § 2254(d).  That
section provides, in relevant part:

> An application for a writ of habeas corpus on behalf of
> a person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim
> that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim (1)
> resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States . . . .

28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362, 402-03
(2000); Lynn v. Bliden, 443 F.3d 238, 245-47 (2d Cir. 2006);
Graham v. Lape, 476 F. Supp. 2d 399, 402 (S.D.N.Y. 2007).

A state court decision is contrary to clearly established
Federal law "if the state court arrives at a conclusion opposite
to that reached by [the Supreme Court] on a question of law" or
"if the state court confronts facts that are materially
indistinguishable from a relevant Supreme Court precedent and
arrives at a result opposite to" the Supreme Court's result.
Williams, 529 U.S. at 405.

A state court decision involves "an unreasonable application
of . . . clearly established Federal law" when the state court
"correctly identifies the governing legal rule but applies it
unreasonably to the facts of a particular prisoner's case."
Williams, 529 U.S. at 407-08.  To meet that standard, "the state
court decision [must] be more than incorrect or erroneous;" it

"must be objectively unreasonable."  <u>Lockyer v. Andrade</u>, 538 U.S.
63, 75 (2003).

The petitioner's two claims are addressed in turn.


### III.

The petitioner first argues that the trial court's ruling
precluding defense counsel from making the argument that the
wallet fell out of Carelis's pocket and that the petitioner
merely found it violated the petitioner's Sixth Amendment right
to the assistance of counsel.  He argues that this ruling was an
unreasonable application of clearly established federal law in
light of <u>Herring v. New York</u>, 422 U.S. 853 (1975).  This argument
has no merit.

In <u>Herring</u>, the Supreme Court held that the complete denial
of defense summation at the close of evidence in a criminal bench
trial pursuant to a state statute giving the judge the right to
deny summations was an unconstitutional denial of the right to
assistance of counsel.  <u>Id.</u> at 865.  But the Court noted that
while the judge cannot deny summation absolutely, he "must be and
is given great latitude in controlling the duration and limiting
the scope of closing summations. . . . He may ensure that
argument does not stray unduly from the mark, or otherwise impede
the fair and orderly conduct of the trial.  In all these respects
he must have broad discretion." <u>Id.</u> at 862.  Because defense

counsel presented a summation in this case but was merely precluded from making a speculative argument that Carelis's wallet fell out of his pocket, the court's ruling was not contrary to any clearly established Supreme Court holding on the basis of the Herring decision.

The petitioner also relies on cases from the Courts of Appeals for the Ninth Circuit and the D.C. Circuit that stand for the proposition that the right to assistance of counsel is denied when defense counsel is not allowed to make arguments relating to its main defense theory or a point essential to the defense.  See United States v. Miguel, 338 F.3d 995, 1000-04 (9th Cir. 2003); United States v. Kellington, 217 F.3d 1084, 1101 (9th Cir. 2000); Conde v. Henry, 198 F.3d 734, 739 (9th Cir. 1999); United States v. Sawyer, 443 F.2d 712, 713 (D.C. Cir. 1971).  However, none of these decisions supports the petitioner's position.

In Sawyer, the Court of Appeals for the D.C. Circuit found that the trial judge erred in preventing defense counsel from explaining the legal difference between an "inference" and a "presumption" in a case where the prosecution asked the jury to infer that the defendant stole certain items that had previously been in a locked car.  443 F.2d at 713.  However, the court found the error harmless because defense counsel was allowed to make effectively the same argument in a different form.  See id. at 714 & n.12.

Miguel was a felony murder case involving several friends who were outside a cabin when one of them shot a man who came out onto the cabin's porch.  The physical evidence and the testimony of some participants placed the defendant Miguel and the shooter in different locations.  When Miguel's counsel tried to argue in summation that another participant might have fired the gun, the trial judge precluded the argument, finding that there was not "a shred of evidence" to support the idea that anyone other than Miguel fired the gun.  Miguel, 338 F.3d at 997-98, 999.  The Ninth Circuit Court of Appeals found this ruling to be in error, and grounds for reversal, because the physical evidence and testimony allowed a permissible inference that would support the defense theory.  Id. at 1001-02.

The Miguel decision cited Kellington, in which the Ninth Circuit Court of Appeals held that a trial judge erred in preventing the defense from arguing the importance of a legal ethics expert's testimony to the defense of an attorney charged with obstruction of justice.  The court found that the legal ethics expert's testimony was "obviously relevant to negate criminal intent," and it therefore held that the defendant's right to the assistance of counsel was violated.  217 F.3d at 1090-91, 1099-01.

The Conde case involved a defendant convicted of kidnapping to commit robbery because he held a former coworker in her car

and used her keys to steal from a restaurant.  198 F.3d at 736-37.  The trial judge precluded the defense from arguing that there was no robbery or intent to rob because the restaurant money was not on the kidnapping victim's person or under her control.  Id. at 738.  On habeas review, the Ninth Circuit Court of Appeals found that this limitation on argument denied the defendant his right to assistance of counsel because it precluded his attorney from arguing the defense theory of the case and it relieved the prosecution of its burden of proving its case beyond a reasonable doubt.  Id. at 739.

In contrast to these cases, the petitioner's trial court only prevented his counsel from making a factual assertion--that Carelis's wallet could have fallen out of his pocket--because there was no evidence to support that factual assertion in the record and it was therefore mere speculation.  The trial court correctly instructed the jury that it was not permitted to speculate and that its own recollection of the evidence governed.  (PA 79.)  The lack of evidence that the wallet fell from Carelis's pocket is in contrast to the Miguel case, where the combination of testimony regarding the defendant's position and physical evidence of a shell casing supported the defendant's contention that someone else fired the gun.  This case is more akin to United States v. Bautista, 252 F.3d 141 (2d Cir. 2001) (per curiam), in which the Court of Appeals for the Second

14

Circuit found no abuse of discretion when the trial judge sustained objections to defense counsel's speculative argument that the lack of certain evidence in the case meant that such evidence did not exist.  See id. at 144-45.

Moreover, the trial court in this case ultimately did not prevent the petitioner's trial counsel from arguing that the petitioner "found" the wallet.  For example, defense counsel presented this theory without objection by asking the jury whether it was "reasonable to believe that [the petitioner] returned the wallet and he did so because he found it."  (PA 81.) Defense counsel also argued without objection that Carelis "can't tell you for sure whether his wallet came out of his pocket at that moment."  (Id. at 78.)  The petitioner therefore was not prevented from presenting his defense theory to the jury, in contrast to Kellington and Conde.  Cf. Sawyer, 443 F.2d at 714 (finding no prejudice to the defendant because his counsel "subsequently made the argument in a form that the trial court found acceptable").

Therefore, the cases the petitioner relies on do not support a finding that the trial court's response to an objection during defense summation was either "contrary to, or involved an unreasonable application of, clearly established Federal law." The trial court's limitation of defense summation was well within its "broad discretion" and consistent with the "great latitude"

it is given to limit the scope of closing summations.  <u>Herring</u>,
422 U.S. at 862.

IV.

The petitioner next argues that his sentence pursuant to New
York's persistent felony offender statute, N.Y. Penal Law
§ 70.10, constituted an unconstitutional denial of his right to a
jury trial under the Sixth and Fourteenth Amendments under
<u>Apprendi</u> and its progeny.  In particular, he argues that the
statute's requirement that the sentencing judge be "of the
opinion that the history and character of the defendant and the
nature and circumstances of his criminal conduct indicate that
extended incarceration and life-time supervision will best serve
the public interest" before imposing an enhanced sentence shows
that the enhanced sentence could not be imposed unless the
sentencing court made some additional findings that were not
submitted to the jury.  N.Y. Penal Law § 70.10(2).

After this petition was fully briefed the Court has had the
opportunity to consider the United States Supreme Court's recent
decisions in <u>Cunningham v. California</u>, 127 S. Ct. 856 (2007), and
<u>Rita v. United States</u>, 127 S. Ct. 2456 (2007), as well as recent
decisions of district courts in this circuit confronting the same
question, including Judge Gleeson's grant of a writ of habeas
corpus in <u>Portalatin v. Graham</u>, 478 F. Supp. 2d 385 (E.D.N.Y.

2007),[1] and Judge Sweet's denial of habeas relief in <u>Morris v.
Artus</u>, 06 Civ. 4095, 2007 WL 2200699 (S.D.N.Y. July 30, 2007).
While <u>Cunningham</u> and <u>Rita</u> were decided after the relevant state
court decisions in this case they provide helpful guidance on how
the Supreme Court characterizes the law established in its prior
decisions that existed at the time of the state court decisions
in this case.

### A.

At the time the Appellate Division affirmed the petitioner's
conviction and modified his sentence and at the time his
conviction became final, <u>Apprendi</u> and <u>Ring</u>, as well as <u>Blakely v.
Washington</u>, 542 U.S. 296 (2004), and <u>United States v. Booker</u>, 543
U.S. 220 (2005), had all been decided. Therefore, each of these
decisions is relevant to determining the "clearly established
Federal law, as determined by the Supreme Court of the United
States," against which the petitioner's sentence must be judged.[2]
This chronology is important because the Court of Appeals for the
Second Circuit has previously denied habeas challenges to the

---

[1]  The respondent filed a notice of appeal of the <u>Portalatin</u> decision on
April 4, 2007, and the judgment is stayed pending appeal.  <u>See</u> 478 F. Supp. 2d
at 407.

[2]  The Supreme Court has given unclear guidance as to the precise time in
the state court sentencing and appellate review process to which a federal
court should look to assess what was "clearly established Federal law," but the
Court of Appeals for the Second Circuit has indicated that the relevant time is
either "the time [the petitioner's] state-court conviction became final" or
"the time of the relevant state-court decision."  <u>Brown v. Greiner</u>, 409 F.2d
523, 533 n.3 (2d Cir. 2005).

constitutionality of New York's persistent felony offender statute, but those challenges arose in cases where the court had occasion to consider only Apprendi, see Brown v. Greiner, 409 F.3d 523, 533 n.3 (2d Cir. 2005) ("Brown I"), or only Apprendi and Ring, see Brown v. Miller, 451 F.3d 54, 57 n.1 (2d Cir. 2006) ("Brown II"), for the purpose of determining the contemporaneous "clearly established Federal law, as determined by the Supreme Court." This Court is bound by the conclusion of the Court of Appeals in Brown I and Brown II that New York's persistent felony offender statute was not contrary to or an unreasonable application of federal law as it existed after Apprendi and Ring were decided but before Blakely was decided. However, because the Court of Appeals for the Second Circuit did not consider the effect of either Blakely or Booker in either Brown I or Brown II, those decisions do not require the denial of the petitioner's Apprendi claim. See Brown II, 451 F.3d at 59 n.3; Brown I, 409 F.3d at 533 n.3.

A review of the Apprendi line of cases through Booker is thus in order. The Apprendi Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The Court found unconstitutional a New Jersey "hate crime" sentencing statute that provided an extended term of

imprisonment where a judge found, by a preponderance of the evidence, that the criminal had "acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." Id. at 468-69.  The Court noted that, in determining whether a finding left to the judge is an "element" of the offense or a "sentencing factor," "the relevant inquiry is one not of form, but of effect--does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" Id. at 494; see also id. at 494 n.19 ("[W]hen the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict.").  The Court also stated that "nothing in [the history of the common law of sentencing] suggests that it is impermissible for judges to exercise discretion--taking into consideration various facts relating both to offense and offender--in imposing a judgment within the range prescribed by statute." Id. at 481.

In 2002, Ring expanded upon the Apprendi rule by finding unconstitutional the Arizona sentencing scheme for capital defendants that set death as the statutory maximum penalty for first-degree murder but allowed a judge to sentence a defendant to death only after determining the presence of an enumerated

"aggravating circumstance" at a sentencing hearing.  Ring, 536 U.S. at 609.  The sentencing judge in Ring's case had found that Ring committed felony murder (as found by the jury) in expectation of something of pecuniary value and in an especially heinous, cruel or depraved manner--two of the statutorily enumerated aggravating circumstances.  Id. at 594-95.  The Court held:  "Because Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' the Sixth Amendment requires that they be found by a jury."  Id. at 609 (quoting Apprendi, 530 U.S. at 494 n.19).

In 2004, Blakely clarified the Apprendi rule still further by holding that Washington State's sentencing regime was unconstitutional because it authorized a certain sentencing range based only on the jury's findings and a potentially higher range if the judge found "substantial and compelling reasons justifying an exceptional sentence."  Blakely, 542 U.S. at 299, 305.  The sentencing statute listed certain aggravating factors justifying an exceptional sentence, but the list was illustrative rather than exhaustive.  Id. at 299.  The Court found that for Apprendi purposes, "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."  Id. at 303-04.  The existing statutory regime did not allow a higher sentence based only on the jury's findings, but rather required

the judge to justify the enhancement based on factors "other than those which are used in computing the standard range sentence for the offense."  Id. at 304 (quoting State v. Gore, 21 P.3d 262, 277 (Wash. 2001)).  The Court observed:

> Whether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in Apprendi), one of several specified facts (as in Ring), or any aggravating fact (as here), it remains the case that the jury's verdict alone does not authorize the sentence.  The judge acquires that authority only upon finding some additional fact.

Id. at 305.  Any such additional factfinding by the judge--even generalized factfinding--that is required to impose an enhanced sentence is thus unconstitutional after Blakely.

Booker followed in 2005, holding that the Sixth Amendment applied to the Federal Sentencing Guidelines and therefore concluding that the provisions making the Guidelines mandatory should be excised, rendering the Guidelines advisory.  See United States v. Booker, 543 U.S. 220, 226-27, 245-46 (2005).  By making the Guidelines advisory, the Court eliminated the requirement that a judge rather than a jury find the facts required to trigger Guideline ranges within broader maxima and minima that were specified by statute.

Recently, in Cunningham, the Court invalidated California's determinate sentencing law ("DSL"), which established for most crimes three sentencing terms, with a sentence in the "upper term" only authorized when the judge, by a preponderance of the

evidence, found "circumstances of aggravation," meaning "<u>facts</u>

<u>which justify the imposition of the upper prison term</u>."

<u>Cunningham v. California</u>, 127 S. Ct. 856, 860, 862 (2007).[3]  Rules

adopted by the state's Judicial Council to guide judges'

discretion provided a non-exhaustive list of aggravating

circumstances such as "[f]acts relating to the crime," "[f]acts

relating to the defendant," and "[a]ny other facts statutorily

declared to be circumstances in aggravation"; the Rules required

that "a fact that is an element of the crime shall not be used to

impose the upper term."  <u>Id.</u> at 862 (quoting Judicial Council

Rules 4.421(a), 4.421(b), 4.421(c), and 4.420(d)); <u>see also</u> <u>id.</u>

at 862 n.4 (explaining composition and authority of the Judicial

Council).

The <u>Cunningham</u> Court overruled the California Supreme

Court's decision in <u>People v. Black</u>, 113 P.3d 534 (Cal. 2005),

and held that, because the DSL required the middle term to be

imposed unless the judge found an aggravating circumstance beyond

the elements of the charged offense, the middle term was the

statutory maximum for <u>Apprendi</u> purposes and any sentence above

the middle term violated "<u>Apprendi</u>'s bright-line rule."  <u>Id.</u> at

---

[3]  <u>Cunningham</u> had not been decided at the time the Appellate Division
rendered its decision or when the petitioner's conviction became final, and it
therefore does not fall within the spectrum of Supreme Court holdings that
comprised "clearly existing Federal law, as determined by the Supreme Court,"
at the relevant time.  Nonetheless, the Court is obligated to consider
<u>Cunningham</u> to the extent that it applies or explains principles that were
"clearly established" in previous Supreme Court cases.  <u>See</u> <u>Portalatin</u>, 478 F.
Supp. 2d at 397 n.10.

868-71.  The Court specifically rejected California's argument
that the DSL merely provided judges with the power to engage in
the discretionary fact finding "that traditionally has been
incident to the judge's selection of an appropriate sentence
within a statutorily prescribed sentencing range."  Id. at 868
(quoting Black, 113 P.3d at 543).  The Court relied primarily on
the Blakely decision in explaining why the upper term in the
California sentencing regime could not be the statutory maximum,
and it distinguished the California sentencing regime from the
post-Booker federal sentencing regime under the merely advisory
Federal Sentencing Guidelines.  See id. at 868-70.  The Court
also quoted Blakely to suggest that Apprendi had established a
"bright-line rule" that the California Supreme Court had failed
to follow.  Id. at 869 (quoting Blakely, 542 U.S. at 307-08).

Most recently, in Rita the Supreme Court held that it was
not a violation of the Sixth Amendment right to a jury trial for
a Court of Appeals to consider an applicable Federal Sentencing
Guideline Range to be presumptively reasonable.  For this case,
the significance of Rita is its reiteration of the Supreme
Court's view of its holding in Blakely:

> The Sixth Amendment question, the Court has said, is
> whether the law forbids a judge to increase a
> defendant's sentence unless the judge finds facts that
> the jury did not find (and the offender did not
> concede).  Blakely, supra, at 303-304, 124 S. Ct. 2531
> ("When a judge inflicts punishment that the jury's
> verdict alone does not allow, the jury has not found

all the facts which the law makes essential to the
punishment and the judge exceeds his proper authority"
(internal quotation marks and citation omitted)); see
Cunningham, supra, at ___, 127 S. Ct., at 865, 866
(discussing Blakely) ("The judge could not have
sentenced Blakely above the standard range without
finding the additional fact of deliberate cruelty,"
"[b]ecause the judge in Blakely's case could not have
imposed a sentence outside the standard range without
finding an additional fact, the top of that range . . .
was the relevant" maximum sentence for Sixth Amendment
purposes) . . . .

Rita, 127 S. Ct. at 2466.


## B.

New York's persistent felony offender law comprises two

subsections.  First, N.Y. Penal Law § 70.10(1) defines a

"persistent felony offender" as "a person, other than a

persistent violent felony offender as defined in section 70.08,

who stands convicted of a felony after having previously been

convicted of two or more felonies."  Next, subsection (2),

specifies the conditions under which a sentencing court can

impose an enhanced sentence.  It provides as follows:

> When the court has found, pursuant to the provisions of
> the criminal procedure law, that a person is a
> persistent felony offender, and when it is of the
> opinion that the history and character of the defendant
> and the nature and circumstances of his criminal
> conduct indicate that extended incarceration and life-
> time supervision will best serve the public interest,
> the court, in lieu of imposing the sentence of
> imprisonment authorized by section 70.00, 70.02, 70.04
> or 70.06 for the crime of which such person presently
> stands convicted, may impose the sentence of
> imprisonment authorized by that section for a class A-I

> felony.   In  such  event  the  reasons  for  the  court's
> opinion shall be set forth in the record.

N.Y. Penal Law § 70.10(2).  The second subsection distinguishes

the persistent felony offender law from New York's persistent

violent felony offender law, which states that the court "must

impose" an enhanced sentence when it finds that the defendant is

a persistent violent felony offender.  N.Y. Penal Law § 70.08(2).

The persistent violent felony offender statute also differs from

the persistent felony offender law at issue in this case in that

the persistent violent felony offender law requires only that the

defendant be convicted of a violent felony offense "after having

previously been subjected to two or more predicate violent felony

convictions."  N.Y. Penal Law § 70.08(1)(a).  In other words, a

defendant convicted of a violent felony offense must be sentenced

as a persistent violent felony offender solely upon a finding of

the fact that the defendant has previously been convicted of two

prior violent felony offenses.

New York Criminal Procedure Law § 400.20 establishes the

procedures, incorporated by reference in N.Y. Penal Law

§ 70.10(2), which a judge must follow to impose a persistent

felony offender sentence.  See N.Y. Crim. Proc. Law § 400.20(1).

It provides in part:

> Such  sentence  may  not  be  imposed  unless,  based  upon
> evidence  in  the  record  of  a  hearing  held  pursuant  to
> this  section,  the  court  (a)  has  found  that  the
> defendant is a persistent felony offender as defined in

> subdivision one of section 70.20 of the penal law, and
> (b) is of the opinion that the history and character of
> the defendant and the nature and circumstances of his
> criminal conduct are such that extended incarceration
> and lifetime supervision of the defendant are warranted
> to best serve the public interest.

N.Y. Crim. Proc. Law § 400.20(1).  The procedural statute

provides further details for how the court must conduct the

required hearing, see id. § 400.20(2)-(4), and it specifies that

the prosecution bears the burden of proof at the hearing and that

"[m]atters pertaining to the defendant's history and character

and the nature and circumstances of his criminal conduct may be

established by any relevant evidence, not legally privileged,

regardless of admissibility under the exclusionary rules of

evidence, and the standard of proof with respect to such matters

shall be a preponderance of the evidence."  Id. § 400.20(5).

Additional procedures are specified for cases where the defendant

controverts allegations relating to his background and prior

criminal conduct.  See id. § 400.20(8)-(9).  Finally, the judge

may terminate the persistent felony offender hearing at any time

without making any finding, in which event the defendant "may not

be sentenced as a persistent felony offender."  § 400.20(10).

      The New York Court of Appeals has interpreted the persistent

felony offender statute in two recent opinions, People v. Rosen,

752 N.E.2d 844 (N.Y. 2001), and People v. Rivera, 833 N.E.2d 194

(2005), which are discussed in detail below.  In each decision,

26

the court evaluated the constitutionality of the statute in light
of the Apprendi line of Supreme Court authority.  This Court is
bound by the New York Court of Appeals' interpretation of New
York statutes, see Johnson v. Fankell, 520 U.S. 911, 916 (1997)
("Neither this Court nor any other federal tribunal has any
authority to place a construction on a state statute different
from the one rendered by the highest court of the State."); see
also Mullaney v. Wilbur, 421 U.S. 684, 691 (1975).  However, the
highest state court's determination whether a statute (as
construed) complies with the federal constitution is not immune
from review; this Court examines the state court's interpretation
of federal constitutional law through the deferential lens
provided by AEDPA.  In other words, the New York Court of
Appeals' view of what the persistent felony offender law provides
is definitive, but its conclusion about its constitutionality
need not be so.


**1.**


     In Rosen, a defendant convicted of first degree sexual abuse
and endangering the welfare of a child challenged his sentence of
twenty-five years to life imprisonment as a persistent felony
offender in light of Apprendi.  The New York Court of Appeals
distinguished the case from Apprendi because in Rosen "it was
defendant's prior felony convictions--an explicitly noted

exception to the general rule in Apprendi--that initially subjected defendant to enhanced sentencing." Rosen, 752 N.E.2d at 847. The court noted that only after the defendant was established to be a twice prior convicted felon did the sentencing court, based on a preponderance of the evidence, review "'[m]atters pertaining to the defendant's history and character and the nature and circumstances of his criminal conduct' . . . to determine whether actually to issue an enhanced sentence." Id. at 847 (quoting N.Y. Crim. Proc. Law § 400.20(5)). It further noted, "[i]t is clear from the . . . statutory framework that the prior felony convictions are the sole determinate of whether a defendant is subject to enhanced sentencing as a persistent felony offender," and that in considering whether other factors justify the enhanced sentence the court is merely "fulfilling its traditional role--giving due consideration to agreed-upon factors--in determining an appropriate sentence within the permissible statutory range." Id. The court did not dispute that a judge had to carry out the second task in order to impose an enhanced sentence, although it deemed that task a traditional exercise of discretion. The court concluded that the persistent felony offender statute was not problematic under Apprendi.[4]

---

[4] In Brown I, the Court of Appeals for the Second Circuit reversed grants of the writ of habeas corpus in two district court cases, including a habeas petition filed by the defendant in Rosen. See Brown I, 409 F.2d at 528-

**2.**

More recently, after the Supreme Court had decided <u>Ring</u>,

<u>Blakely</u>, and <u>Booker</u>, the New York Court of Appeals revisited its

<u>Rosen</u> holding in <u>Rivera</u>.[5]  The court upheld <u>Rosen</u>, but added to

its analysis.  The court reiterated its view that a sentencing

judge's finding of two or more prior felony convictions, which is

clearly permitted under the <u>Apprendi</u> exception, is the "<u>sole</u>

<u>determinant</u> of whether a defendant is subject to recidivist

sentencing."  <u>Rivera</u>, 833 N.E.2d at 197.  The second prong of

N.Y. Penal Law § 70.10, the court found, merely allows "the

exercise of judicial discretion characteristic of indeterminate

sentencing schemes."  833 N.E.2d at 197-98.  "Under our

interpretation of the relevant statutes, defendants are eligible

for persistent felony offender sentencing based <u>solely</u> on whether

---

30, 535.  The court found the New York Court of Appeals' holding was not
contrary to or an unreasonable application of <u>Apprendi</u>.  The court described
the "second determination" under the persistent felony offender statute, i.e.
the inquiry into "the history and character of the defendant and the nature and
circumstances of his criminal conduct," as a "vague, amorphous assessment," and
therefore found that the New York Court of Appeals' holding that this exercise
differed from the "precise finding of a specific fact, as in the cases
culminating in <u>Apprendi</u>" passed muster under AEDPA's deferential standard.  <u>Id.</u>
at 534-35.

    <u>Brown II</u>, which also considered the effect of <u>Ring</u> on the persistent
felony offender law, similarly relied on the <u>Rosen</u> court's interpretation of
the law, and it found that <u>Ring</u> did not change the outcome.  <u>See</u> <u>Brown II</u>, 451
F.3d at 59.  The Court of Appeals found that the statute at issue in <u>Ring</u>, like
<u>Apprendi</u>, required the sentencing court to find "specified facts," and not the
kind of "'amorphous' determination required by New York's statute."  <u>Id.</u>

    [5] <u>Rivera</u> represents the New York Court of Appeals' most recent
interpretation of the persistent felony offender law.  Because it was issued
before and relied upon in the Appellate Division's review of the petitioner's
appeal, <u>see</u> <u>Washington</u>, 799 N.Y.S.2d at 218, it is <u>Rivera</u>'s interpretation of
the New York statute that the Court must take as authoritative for the purposes
of this petition.

they had two prior felony convictions.  Thus, as we held in

Rosen, no further findings are required." Id. at 198.  In an

alternative formulation, the court stated that "the predicate

felonies are both necessary and sufficient conditions for

imposition of the authorized sentence for recidivism." Id. at

199.

While the plain language of N.Y. Crim. Proc. Law § 400.20

requires the judge to make certain findings before imposing an

enhanced sentence, the Rivera court found that this procedural

law "implements, but does not change, the Penal Law § 70.10

definition of who is--and may be sentenced as--a persistent

felony offender." Id. at 198.  In other words:

> Criminal Procedure Law § 400.20, by authorizing a
> hearing on facts relating to the defendant's history
> and character, does not grant defendants a legal
> entitlement to have those facts receive controlling
> weight in influencing the court's opinion.  The
> statutory language requiring the sentencing court to
> consider the specified factors and to articulate the
> reason for the chosen sentence grants defendants a
> right to an airing and an explanation, not a result.

Id. at 199.  In characterizing the procedural statute this way,

the court drew an analogy to the federal sentencing statute,

which after the Booker remedial ruling still requires federal

sentencing courts to consider various factors, including "the

history and characteristics of the defendant." Id. (citing 18

U.S.C. § 3553(a)(1)).  The court thus found that a defendant who

has been adjudicated as a persistent felony offender "has a

statutory right to present evidence that might influence the
court to exercise its discretion to hand down a sentence as if no
recidivism finding existed, while the People retain the burden to
show that the defendant deserves the higher sentence." Id.

The court also found that the requirement to articulate
findings with respect to the history and character of the
defendant and the nature and circumstances of his criminal
conduct merely serves to aid the Appellate Division's judicial
review of sentences for undue harshness in the interest of
justice. Id. at 199-200; see also id. at 200 n.7 (noting that
"there appears to be no analogue in the federal judiciary to our
Appellate Division's authority to vacate or modify a sentence
based on the interest of justice as opposed to on the law"). The
court described the nature of that judicial review as follows:
"[O]nce a defendant is adjudged a persistent felony offender, a
recidivism sentence cannot be held erroneous as a matter of law,
unless the sentencing court acts arbitrarily or irrationally."
Id. at 199.

The court explained its understanding of the practical
effect of the persistent felony offender statute and the
associated procedural law:

> If, for example, a defendant had an especially long and
> disturbing history of criminal convictions, a
> persistent felony offender sentence might well be
> within the trial justice's discretion even with no
> further factual findings. Once the defendant is

31

adjudicated a persistent felony offender, the
requirement that the sentencing justice reach an
opinion as to the defendant's history and character is
merely another way of saying that the court should
exercise its discretion.

Id. at 201.[6]

### C.

As noted above, the Second Circuit Court of Appeals

decisions in Brown I and Brown II concluded that New York's

persistent felony offender statute was neither contrary to nor an

unreasonable application of clearly established federal law as it

existed after Ring was decided, but they did not address whether

Blakely or Booker further clarified federal law in a way that

---

[6] Two judges dissented from the majority opinion in Rivera. Chief Judge
Kaye agreed that the statutory scheme would be constitutional if it were as the
majority opinion described it, but she found that the plain language of the
statute could not support the meaning the majority ascribed to it.  833 N.E.2d
at 202 (Kaye, C.J., dissenting).  She noted that § 70.10 differs from New
York's persistent violent felony offender statute, N.Y. Penal Law § 70.08, in
that a finding that a defendant is a persistent felony offender is "necessary
but not sufficient to render a defendant eligible for enhanced sentencing under
CPL 400.20."  Id. at 203 (emphasis added).  Referring to the conjunctive "and"
in § 400.20(1), Chief Judge Kaye could not "agree that the second prerequisite
is merely optional."  Id.  She further found that the court could not evade
Blakely by characterizing the second-prong factfinding as mere "opinion,"
because after Blakely any factfinding at all not left to the jury that is
essential to the sentence is not constitutional.  Id.
        Chief Judge Kaye argued that the Rivera majority opinion reflected a
change in New York law because, prior to the decision, the Appellate Division
had regularly vacated enhanced sentences for failure to follow the procedures
or make the findings required by § 400.20.  Id. at 204.  She also contended
that the majority was wrong to imply that these vacaturs were made in the
interest of justice because the decisions themselves often indicated that the
sentence was being modified "on the law."  Id.  She concluded:
        By requiring that a court hold a hearing and make findings before
        it could impose a persistent felony sentence, the Legislature
        sought to limit the availability of enhanced punishment to a
        subclass of persistent offenders.  Today, however, the majority
        announces that every three-time nonviolent felon is automatically
        eligible, without more, for a potential life sentence.  That
        decision is for the Legislature, not the Court.
Id. at 205; see also id. at 205-10 (Ciparick, J., dissenting).

would change this conclusion.  Furthermore, neither decision reviewed the New York statute in view of the gloss given to it by the New York Court of Appeals in Rivera.  See, e.g., Brown II, 451 F.3d at 59 n.3.

Two district courts in this circuit recently have considered habeas challenges to New York's persistent felony offender statute in exactly the same chronological context that applies to the present petition--namely, they reviewed sentences that became final after Booker and after the Rivera decision construed the statute.[7]

In Portalatin, Judge Gleeson granted habeas relief to a prisoner sentenced under the statute.  He found that Rivera "leaves all of §§ 70.10 and 400.20 intact" and thus failed to remove the factfinding requirement embodied in N.Y. Crim. Proc. Law § 400.20(9), which provides that in order to impose an enhanced sentence, the court "must . . . make such findings of fact as it deems relevant to the question of whether a persistent felony offender sentence is warranted." Portalatin, 478 F. Supp. 2d at 403 (quoting N.Y. Crim. Proc. Law § 400.20(9)) (emphasis added).  He rejected two arguments the Rivera decision made to

---

[7]  Previously, several courts had concluded that the persistent felony offender statute survived habeas review even in light of Blakely.  See Woods v. Haponick, 05 Civ. 4374, 2006 WL 2482022, at *10 n.7 (E.D.N.Y. Aug. 25, 2006) (adopted Report and Recommendation); Phillips v. Artus, 05 Civ. 7974, 2006 WL 1867386, at *6 (S.D.N.Y. June 30, 2006); Witherspoon v. Woods, 04 Civ. 5528, 2006 WL 721510, at *4 n.2 (E.D.N.Y. March 6, 2006); Alston v. Woods, 04 Civ. 8017, 2005 WL 3312818, at *5 (S.D.N.Y. Dec. 8, 2005) (Report and Recommendation).

explain this requirement away.  First, he rejected Rivera's
explanation that the factfinding was required only to assist the
appellate review process, finding that "[i]t elevates form over
substance to assert that the findings are required to facilitate
appellate review but not to impose the sentence to begin with."
Id. at 403.  Second, he rejected Rivera's perpetuation of the
distinction drawn earlier in Rosen between the kinds of facts
necessary to impose sentences under the regimes the Supreme Court
rejected in Apprendi, Ring, Blakely, and Booker, and the mere
exercise of the "traditional discretionary sentencing role" that
judges have always performed.  Id. at 404 & n.17.  "No matter how
distant the facts at issue may be from the elements of the
offense or their 'functional equivalents,' and no matter how
'holistic' or 'amorphous' the inquiry may be, if the sentencing
court's authority to impose a persistent felony offender sentence
is conditioned on factfindings that must be made by the court,
such sentences cannot withstand Sixth Amendment scrutiny."  Id.
at 404.

Finally, Judge Gleeson found a "critical dissimilarity"
between New York's sentencing regime and the post-Booker federal
sentencing regime in that the New York statutes still condition
an enhanced sentence on judicial factfindings rather than mere
consideration of factors by the sentencing judge.  Id. at 404-05.
Hence, despite Rivera's description of the persistent felony

34

offender law, Judge Gleeson found that its effect was contrary to clearly established federal law and an "unreasonable application of the Apprendi rule" in light of Blakely and Booker.  Id. at 406.

In contrast, Judge Sweet denied habeas relief in Morris, 2007 WL 2200699 at *1.  He found that Rivera's construction of the persistent felony offender law took it "out of the zone of the Sixth Amendment" because once a defendant is found to meet the statutory definition of a persistent felony offender, "the prescribed statutory maximum for Apprendi purposes becomes life imprisonment."  Id. at *9.  The second prong of the statute merely "constitutes the sentencing judge's exercise of her discretion to sentence the defendant within the expanded statutory range and requires that the sentencing judge state her reasoning for imposing the particular sentence."  Id.  Moreover, Judge Sweet agreed with several other courts that have concluded that "Blakely does not materially change the factfinding analysis," and therefore nothing in Blakely disturbs the Court of Appeals for the Second Circuit's view that the persistent felony offender law survives habeas review under Apprendi and Ring.  Id. at *8.

D.

Having carefully considered the abundant authority discussed above, including the Supreme Court's holdings from <u>Apprendi</u> through <u>Booker</u> and the New York Court of Appeals' construction of the persistent felony offender law in <u>Rivera</u>, the Court concludes that the recidivist sentencing regime is both contrary to and an unreasonable application of clearly established federal law.

The <u>Apprendi</u> rule requires a definition of the boundary between "factfinding" necessary to impose a sentence under a given statutory regime and the exercise of judicial discretion to select a sentence within a statutorily defined range.  The breadth of the factfinding prohibited by <u>Apprendi</u> in the sentencing process was somewhat unclear for years after that decision.  Indeed the Courts of Appeals uniformly held prior to <u>Blakely</u> that <u>Apprendi</u> did not render the mandatory Federal Sentencing Guidelines unconstitutional.  <u>See, e.g.</u>, <u>United States</u> <u>Penaranda</u>, 375 F.3d 238, 243 & n.5 (2d Cir. 2004) (en banc) (noting that "we have understood <u>Apprendi</u> to be limited, as the majority opinion in that case states, to 'any fact that increases the penalty for a crime <u>beyond</u> <u>the</u> <u>prescribed</u> <u>statutory</u> <u>maximum</u>,' . . . and therefore have not required that any fact-finding necessary for application of the Guidelines be done by a jury.  All other circuits have adopted a similar understanding of <u>Apprendi</u>" and collecting cases).  The Supreme Court, based

specifically on Blakely, then found the Federal Sentencing
Guidelines to be unconstitutional in Booker to the extent that
they were mandatory.   In Blakely, the Supreme Court did more than
repeat the holding of Apprendi.   It clarified that the rule
precluded an enhanced sentence conditioned on "any aggravating
fact" found by the judge rather than jury, not just a "specified
fact (as in Apprendi), [or] one of several specified facts (as in
Ring)."   Blakely, 542 U.S. at 305; see also Cunningham, 127 S.
Ct. at 869 ("We cautioned in Blakely, however, that broad
discretion to decide what facts may support an enhanced sentence,
or to determine whether an enhanced sentence is warranted in any
particular case, does not shield a sentencing system from the
force of our decisions.").   The Court further explained that
describing such a necessary finding of fact as an act of judicial
discretion could not rescue it from the Apprendi rule:   "Whether
the judicially determined facts require a sentence enhancement or
merely allow it, the verdict alone does not authorize the
sentence."   Id. at 305 n.8.   Hence, at least after Blakely,
Supreme Court precedents clearly show that a sentence that would
not be statutorily authorized but for the finding of some
aggravating fact, no matter how generalized or "amorphous," Brown
I, 409 F.2d at 534, by a judge rather than a jury, is contrary to
the Sixth Amendment right to a jury trial.[8]

---

[8]  For this reason, the holdings of Brown I and Brown II do not dictate the

It is exactly this sort of generalized finding of aggravating facts and circumstances that the New York persistent felony offender law requires the judge, rather than the jury, to perform before imposing an enhanced sentence.  The New York Court of Appeals at several points in its Rivera decision states that a judicial finding of two prior felony convictions is alone sufficient to trigger an enhanced sentence under N.Y. Penal Law § 70.10.  E.g., Rivera, 833 N.E.2d at 199 ("As we explained in Rosen, the predicate felonies are both necessary and sufficient conditions for imposition of the authorized sentence for recidivism . . . ."); id. at 197 ("[T]he prior felony convictions are the sole determinant of whether is defendant is subject to recidivist sentencing . . . .").  But, in this instance at least, the general conclusion did not alter the requirements of the statute.

For, as Judge Gleeson correctly recognized, the New York Court of Appeals did not excise any requirements of N.Y. Penal Law § 70.10 or of N.Y. Crim. Proc. Law § 400.200.  Portalatin, 478 F. Supp. 2d at 403.  It therefore did not remove the second requirement that an enhanced sentence "may not be imposed unless . . . the court . . . is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct are such that extended incarceration and

---

outcome of the present petition.

lifetime supervision of the defendant are warranted to best serve
the public interest." N.Y. Crim. Proc. Law § 400.20(1); see also
N.Y. Penal Law § 70.10(2). There can be no question after
Blakely that such an "opinion" constitutes a proscribed judicial
finding of aggravating facts, no matter how generalized,
particularly in view of the procedural provisions imposing the
burden of proof on the prosecution and specifying that such a
"finding" "may be established by any relevant evidence" under a
preponderance of the evidence standard. Id. § 400.20(5); see
also Rivera, 833 N.E.2d at 199 (noting burden of proof); id. at
203 (Kaye, C.J., dissenting) (noting that Blakely makes it clear
that even an "opinion" required by statute constitutes a finding
of fact). It is therefore no answer to describe the statutorily
required finding as the mere "exercise of judicial discretion."
Rivera, 833 N.E.2d at 198.

    The New York Court of Appeals' description of this
requirement as an exercise aimed at developing the record for
judicial review, see Rivera, 833 N.E.2d at 200, is similarly
insufficient because the requirement remains intact as a
necessary step preceding the imposition of an enhanced sentence,
and "the Apprendi principle . . . is one of effect, not form."
Portalatin, 478 F. Supp. 2d at 403.

    It is clear, even after the Rivera decision, that before a
persistent felony sentence is imposed the sentencing court must

find two things.  The court must find, first, that the defendant
is a persistent felony offender because the defendant was
convicted of a felony after having previously been convicted of
two or more felonies.  Second, the court must find that the
sentencing court is of the opinion that the history and character
of the defendant and the nature and circumstances of his criminal
conduct indicate that extended incarceration and life-time
supervision will best serve the public interest.  N.Y. Penal Law
§ 70.10(2).  It is not true that the finding of the two prior
felony convictions is sufficient to trigger the ability of the
court to sentence a defendant up to life imprisonment.  Rather,
the second finding is still necessary to open the possibility for
the court to impose that enhanced sentence.  As the Supreme Court
recently explained in expounding on the holding in Blakely:  "The
Sixth Amendment question . . . is whether the law forbids a judge
to increase a defendant's sentence unless the judge finds facts
that the jury did not find (and the offender did not concede)."
Rita, 127 S. Ct. at 2466 (citing Blakely).  In this case, the
sentencing court would have been forbidden under the Penal Law to
impose a sentence in excess of four years unless the court found
both the two prior convictions and the findings with respect to
the defendant and his criminal conduct.  The latter finding is
precisely what the Supreme Court has determined the sentencing

court cannot make in the absence of a jury finding or an admission by the defendant.

The concluding remarks of the <u>Rivera</u> majority in fact prove the point that more than a mere finding of two predicate felonies is required under the persistent felony offender sentencing regime.  The court notes that in a case involving a defendant with "an especially long and disturbing history of criminal convictions, a persistent felony offender sentence might well be within the trial justice's discretion even with no further factual findings."  833 N.E.2d at 201.  The example suggests that not only two predicate offenses, but also a "long and disturbing history" sufficient to satisfy the second prong of the sentencing court's analysis, would be necessary to justify the enhanced sentence.  In the court's example, it is not simply the fact of the prior convictions that triggers the possibility of imposing the enhanced sentence, but the nature of that criminal history. Of course, there may be other factors, apart from a lengthy and disturbing history of prior convictions, that could justify an enhanced sentence, but under the statute those facts must be found by the sentencing judge rather than a jury and it is the shift in factfinding from the jury to the judge for facts necessary to enhance the sentence that the Supreme Court has found to be unconstitutional.

Finally, the Court agrees with Judge Gleeson's conclusion that the judicial factfinding required at the second prong of analysis under the persistent felony offender law differs from the post-Booker federal sentencing regime, which requires the sentencing court to consider various factors including the history and characteristics of the defendant.  See Portalatin, 478 F. Supp. 2d at 404-05.  The New York law does more than ask the sentencing judge to consider various factors; it requires a judicial factfinding based on those factors before imposing an enhanced sentence.

Because New York's persistent felony offender law requires the finding of aggravating facts, other than the finding of two predicate felonies, by the judge rather than the jury, the law is contrary to federal law clearly established in the holding of Blakely.  Furthermore, the imposition of a sentence of fifteen years to life imprisonment in this case based on judicial factfinding, when the petitioner would otherwise have been subject to at most four years imprisonment as a class "E" second felony offender, constitutes an objectively unreasonable application of the Apprendi rule as it was clarified by Blakely and Booker.

## CONCLUSION

For the reasons explained above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **granted**.  The respondent is ordered to release the petitioner from custody unless within sixty (60) days of the date of this Opinion and Order, the petitioner is resentenced by the New York State Supreme Court, New York County.

SO ORDERED.

Dated:     New York, New York
           August 27, 2007

                              John G. Koeltl
                              United States District Judge

43